**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

**JOHN DOE,** by and through his true identity filed under seal pursuant to Civil L.R. 10(c),

Plaintiff,

v.

**BRANDON D. JEANPIERRE**, in his individual capacity;
**JOHN/JANE DOE PREA OFFICIALS 1-5,** in their individual capacities;
**JOHN/JANE DOE CLASSIFICATION AND TRANSFER OFFICIALS 1-5,** in their individual capacities;
**JOHN/JANE DOE SUPERVISORY OFFICIALS 1-5,** in their individual capacities; and
**JARED HOY,** Secretary of the Wisconsin Department of Corrections, in his official capacity for prospective relief only,

Defendants.

Case No. ________________

**COMPLAINT AND JURY DEMAND**

## COMPLAINT AND JURY DEMAND

## INTRODUCTION

1. This is a federal civil-rights action arising from the sexual abuse of Plaintiff John Doe by a Wisconsin correctional officer while Plaintiff was incarcerated at Oshkosh Correctional Institution.

2. Plaintiff is the real party in interest under Fed. R. Civ. P. 17(a). He proceeds under the public-docket pseudonym John Doe solely to protect his identity as the victim of a PREA sexual-abuse report. Plaintiff is contemporaneously filing his true identity under seal pursuant to Civil L.R. 10(c).

3. Defendant Brandon D. Jeanpierre used the authority, access, and control made possible by his position as a correctional officer to subject Plaintiff to nonconsensual sexual contact and oral sexual assault.

4. After Plaintiff reported the abuse, Wisconsin correctional officials had actual notice that Plaintiff was the victim of alleged staff sexual abuse, that he feared retaliation, that his identity as the reporting victim required protection, and that he required retaliation monitoring, continuity of mental-health care, and a competent PREA response.

5. Instead of providing a reasonably protective, confidential, and trauma-informed response, correctional officials exposed Plaintiff to harmful post-report treatment, including repeated institutional transfers, deficient protection, deficient retaliation monitoring, deficient incident-review follow-through, inadequate confidentiality protections, and inadequate continuity of mental-health response.

6. Plaintiff was later released from physical confinement. On information and belief, that release occurred at least in part because WDOC was unable to keep Plaintiff's identity as a PREA sexual-abuse victim confidential from correctional staff who took issue with Plaintiff's report, cooperation, and the resulting criminal consequences for another correctional officer.

7. Plaintiff remains on extended supervision for several years and therefore remains subject to WDOC custody, control, supervision, supervision conditions, supervision personnel, confidentiality risks, and possible return to physical custody if WDOC alleges or establishes a violation of extended supervision.

8. Plaintiff brings this action under 42 U.S.C. § 1983 for violations of the First and Eighth Amendments, together with related state-law claims and prospective protective relief as set forth below.

9. PREA and WDOC PREA-related standards are pleaded as factual context and evidence of notice, duties, foreseeability, required confidentiality, retaliation-monitoring obligations, incident-review obligations, and the inadequacy of the institutional response. Plaintiff does not assert PREA as a standalone private cause of action.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

11. This Court has supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367 because those claims arise from the same case or controversy as Plaintiff's federal claims.

12. Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred at Oshkosh Correctional Institution in Winnebago County, Wisconsin.

13. The Green Bay Division is appropriate because Winnebago County is within the Green Bay Division of the Eastern District of Wisconsin.

## PARTIES

14. Plaintiff John Doe is an adult citizen of the United States. At all relevant times, Plaintiff was a person in the custody of the Wisconsin Department of Corrections.

15. Plaintiff's true identity is filed under seal and is not included in the public version of this Complaint because this action arises from a PREA sexual-abuse complaint and because public disclosure would create substantial safety, retaliation, privacy, stigma, and mental-health risks.

16. Plaintiff has been released from physical confinement but remains on extended supervision for several years and remains subject to WDOC legal custody, control, supervision, supervision personnel, supervision records, and potential return to physical custody.

17. Defendant Brandon D. Jeanpierre was, at all relevant times, a correctional officer employed by the Wisconsin Department of Corrections at Oshkosh Correctional Institution. He is sued in his individual capacity.

18. Defendant John/Jane Doe PREA Officials 1-5 are Wisconsin Department of Corrections officials, employees, investigators, PREA compliance personnel, PREA regional personnel, or other staff who were personally involved in receiving, investigating, substantiating, closing, documenting, communicating about, disclosing, or responding to Plaintiff's PREA complaint. They are sued in their individual capacities.

19. Defendant John/Jane Doe Classification and Transfer Officials 1-5 are Wisconsin Department of Corrections officials or employees who were personally involved in decisions to transfer, classify, house, separate, transport, release, supervise, or otherwise move or manage Plaintiff after he reported staff sexual abuse. They are sued in their individual capacities.

20. Defendant John/Jane Doe Supervisory Officials 1-5 are Wisconsin Department of Corrections supervisors, wardens, security directors, captains, administrators, or other supervisory personnel who had actual notice of Plaintiff's report and were personally involved in, directed, approved, recommended, ratified, or knowingly failed to correct the post-report misconduct alleged herein. They are sued in their individual capacities.

21. Defendant Jared Hoy is the Secretary of the Wisconsin Department of Corrections. He is sued in his official capacity only for prospective protective and injunctive relief. Plaintiff does not seek damages against Secretary Hoy in his official capacity.

22. The identities of the Doe Defendants are presently within the possession or control of the Wisconsin Department of Corrections and will be substituted after discovery, disclosure, or court-authorized identification of the responsible officials.

## FACTUAL ALLEGATIONS

### *A. Sexual abuse by Defendant Jeanpierre*

23. On or about October 30-31, 2024, Plaintiff was incarcerated at Oshkosh Correctional Institution.

24. During the relevant period, Jeanpierre was working as a correctional officer and was acting under color of state law.

25. Jeanpierre had custodial authority over Plaintiff, had access to Plaintiff's housing unit and work areas, and used his position to control Plaintiff's movements.

26. Plaintiff was assigned to janitorial or maintenance work that allowed him to move within areas subject to officer control during the relevant time frame.

27. Plaintiff reported that Jeanpierre approached Plaintiff's cell and demanded words to the effect of, "Let me see it."

28. Jeanpierre then reached into Plaintiff's cell and grabbed Plaintiff's penis through his clothing without consent.

29. Plaintiff froze, was shocked, and did not consent to the contact.

30. Plaintiff later reported that Jeanpierre brushed or swiped his hand against Plaintiff's genital area additional times while Plaintiff was performing institutional duties.

31. Later that evening, Jeanpierre directed Plaintiff into a laundry room near the unit.

32. Inside the laundry room, Jeanpierre pulled down Plaintiff's shorts and put Plaintiff's penis in Jeanpierre's mouth without Plaintiff's consent.

33. Plaintiff did not consent verbally, physically, impliedly, or otherwise to any sexual contact with Jeanpierre.

34. Plaintiff was in a custodial setting, subject to Jeanpierre's authority, and deprived of any ordinary ability to leave, resist safely, or obtain immediate outside protection.

35. Jeanpierre's sexual contact with Plaintiff served no legitimate penological, security, disciplinary, medical, or institutional purpose.

36. Jeanpierre's conduct was intentional, malicious, sexually abusive, degrading, and objectively repugnant to contemporary standards of decency.

37. Jeanpierre's conduct constituted sexual contact or a sexual act and involved physical contact sufficient to support recovery for the injuries alleged herein.

***B. Prompt report, corroboration, forensic evidence, and criminal disposition***

38. Plaintiff promptly reported the assault.

39. The morning after the assault, Plaintiff disclosed the assault during a prison phone call with his girlfriend and expressed fear that reporting the assault internally could lead to retaliation, backlash, or other consequences.

40. Plaintiff's girlfriend contacted outside law enforcement because Plaintiff feared the institution would not handle the complaint appropriately.

41. Plaintiff also disclosed the assault to another incarcerated person, who encouraged Plaintiff to report the assault and helped preserve clothing and information relevant to the assault.

42. Law enforcement responded to Oshkosh Correctional Institution and opened an investigation.

43. Correctional and law-enforcement personnel obtained or reviewed surveillance information showing Plaintiff and Jeanpierre entering the laundry room together multiple times during the relevant evening, including entries with the lights off.

44. Plaintiff underwent a sexual-assault examination and forensic evidence collection.

45. Law enforcement collected clothing and other evidence associated with the assault.

46. A search warrant was obtained for Jeanpierre's DNA.

47. Forensic testing later generated highly significant results supporting inclusion of Jeanpierre's DNA on swabs collected from Plaintiff's penis.

48. On information and belief, criminal proceedings arising from the same conduct resulted in Jeanpierre entering a plea to a sexual-assault offense and receiving a prison sentence followed by extended supervision.

49. On information and belief, despite the sexual-assault nature of the conviction, Jeanpierre later received or was approved for earned release or other early-release treatment that Plaintiff contends should not have been available for the offense of conviction. Plaintiff pleads this allegation to preserve discovery concerning WDOC's handling of the offender, the offense, institutional accountability, and related decision-making.

50. The criminal disposition and forensic evidence substantially corroborate Plaintiff's report that he was sexually abused by Jeanpierre while in custody.

***C. PREA report, institutional notice, confidentiality, and post-report response***

51. Plaintiff's report constituted a report of staff-on-incarcerated-person sexual abuse under PREA and WDOC policy.

52. Institutional staff, supervisors, and PREA personnel had actual notice of Plaintiff's allegation shortly after it was made.

53. PREA-related staff were present during initial law-enforcement contact with Plaintiff and were aware that Plaintiff was alleging sexual abuse by a correctional officer.

54. Plaintiff expressed fear of retaliation, backlash, and institutional consequences if he reported staff sexual abuse.

55. On information and belief, Plaintiff's PREA complaint was ultimately substantiated.

56. On information and belief, despite the seriousness of the allegation and the substantiated outcome, Plaintiff was not interviewed by the PREA investigator in the manner expected of a competent, complete, trauma-informed PREA investigation.

57. On information and belief, WDOC was required to maintain appropriate confidentiality concerning Plaintiff's identity as the reporting PREA victim and to restrict dissemination of information related to the report to legitimate treatment, investigative, security, and management needs.

58. On information and belief, WDOC was required to protect Plaintiff from retaliation, monitor for retaliation, document status checks, evaluate housing and program changes, and take corrective action when retaliation, intimidation, or safety risks appeared.

59. On information and belief, WDOC was required to conduct or document a sexual-abuse incident review or comparable after-action review to determine whether staff actions, staffing, supervision, monitoring, physical plant, policies, or practices contributed to the assault or to the post-report risk of harm.

60. Plaintiff alleges that Doe Defendants failed to adequately protect his identity as the reporting PREA victim, failed to adequately protect him from correctional-staff hostility or

retaliation, failed to adequately monitor and respond to retaliation risk, failed to ensure an adequate incident review, and failed to ensure continuity of trauma-informed care.

61. Plaintiff alleges that those failures were personally caused, approved, ratified, or knowingly allowed by one or more Doe PREA, classification, transfer, supervisory, or other responsible WDOC officials.

***D. Repeated transfers, staff hostility, early release, and continuing WDOC control***

62. After Plaintiff reported the assault and cooperated with law-enforcement and PREA-related processes, Plaintiff's identity as the reporting victim became known to correctional staff.

63. On information and belief, certain correctional staff took issue with Plaintiff because his report and cooperation resulted in another correctional officer being charged, arrested, convicted, and incarcerated.

64. Correctional officials knew Plaintiff had reported staff sexual abuse, knew he feared retaliation, knew the alleged assailant was a state employee, and knew Plaintiff required protection, confidentiality, retaliation monitoring, and continuity of mental-health care.

65. Rather than stabilizing and protecting Plaintiff, correctional officials transferred him repeatedly after his report.

66. Plaintiff was moved through approximately seven institutions after the report.

67. Those transfers were harmful and destabilizing to Plaintiff and disrupted his sense of safety, mental-health continuity, ability to document his complaint, and ability to pursue institutional remedies.

68. Plaintiff reasonably experienced the transfers as retaliatory or designed to isolate him, frustrate his complaint, reduce institutional exposure, or avoid meaningful institutional accountability.

69. The timing, number, and circumstances of the transfers support a reasonable inference that Plaintiff's protected report, PREA activity, and cooperation with law enforcement were motivating factors in one or more transfer, classification, housing, or handling decisions.

70. On information and belief, WDOC was unable or unwilling to protect Plaintiff's identity as the reporting PREA victim from correctional staff who took issue with him for reporting and cooperating against another correctional officer.

71. On information and belief, WDOC's inability to keep Plaintiff's identity confidential and protect him from staff hostility, retaliation risk, and continued institutional harm was a substantial reason Plaintiff was released early from physical confinement.

72. Plaintiff's early release does not eliminate the ongoing risk or the need for prospective relief because Plaintiff remains on extended supervision for several years and remains subject to WDOC legal custody, control, supervision, supervision personnel, supervision records, and possible return to physical confinement.

73. If Plaintiff is detained, revoked, sanctioned, transported, housed, or otherwise returned to physical custody during the term of extended supervision, he faces renewed risk that his identity as a PREA victim and reporting witness will be disclosed, misused, or used to subject him to retaliation, harassment, unsafe handling, or psychological harm.

74. Even while in the community, Plaintiff remains subject to WDOC/DCC supervision personnel and supervision decisions, and he requires protection against retaliation,

unnecessary disclosure, punitive supervision treatment, or dissemination of PREA-related identity information beyond a strict need-to-know basis.

***E. Mental-health harm, trauma, and damages***

75. Plaintiff repeatedly sought PSU or mental-health assistance after the assault.

76. Plaintiff had preexisting trauma vulnerabilities, including childhood sexual abuse history, that made the assault and post-report mishandling especially harmful and made severe psychological consequences foreseeable.

77. Plaintiff suffered trauma reactivation, fear, humiliation, shame, loss of dignity, anxiety, sleep disturbance, distress, and other psychological injuries as a result of the assault and the post-report institutional response.

78. Plaintiff's ongoing privacy and safety interests are acute because this case identifies him as the victim of custodial sexual abuse and requires discussion of intimate sexual assault, forensic, mental-health, and trauma-related facts.

79. Plaintiff has suffered and will continue to suffer compensable damages, including emotional distress, mental anguish, loss of dignity, loss of bodily autonomy, trauma-related injury, treatment-related damages, and other damages to be proven at trial.

***F. Exhaustion and notice***

80. Plaintiff exhausted administrative remedies that were available to him concerning the sexual abuse and related post-report misconduct.

81. To the extent Defendants contend that any particular grievance step was not completed, Plaintiff alleges that the remedy was unavailable or effectively unavailable because of transfers, nonresponse, PREA handling, institutional control over the process, fear of retaliation, confidentiality failures, staff hostility, or other circumstances outside Plaintiff's control.

82. Plaintiff does not plead exhaustion as an element of his claims. Plaintiff includes these allegations to avoid any suggestion that he failed to pursue available remedies.

83. To the extent state-law claims are asserted, Plaintiff served a written Notice of Claim on the Wisconsin Attorney General by certified mail as required by Wisconsin law, and more than 120 days elapsed without resolution before this action was filed.

## COUNT I

### 42 U.S.C. § 1983 - Eighth Amendment Sexual Abuse / Cruel and Unusual Punishment Against Defendant Jeanpierre in His Individual Capacity

84. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

85. Jeanpierre acted under color of state law.

86. Jeanpierre intentionally subjected Plaintiff to nonconsensual sexual touching and oral sexual assault.

87. The abuse was objectively serious and violated contemporary standards of decency.

88. Jeanpierre acted maliciously, sadistically, for sexual gratification, for humiliation, for degradation, in abuse of power, or in reckless disregard of Plaintiff's bodily integrity and federally protected rights.

89. Jeanpierre's acts served no legitimate penological purpose.

90. Jeanpierre violated Plaintiff's rights under the Eighth Amendment.

91. As a direct and proximate result, Plaintiff suffered compensable injuries and damages.

92. Jeanpierre's conduct was intentional, malicious, willful, wanton, reckless, and in callous disregard of Plaintiff's federally protected rights, supporting punitive damages.

## COUNT II

### 42 U.S.C. § 1983 - First Amendment Retaliation Against Doe PREA, Classification, Transfer, and Supervisory Officials in Their Individual Capacities

93. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

94. Plaintiff engaged in protected activity by reporting sexual abuse, invoking PREA processes, seeking protection, cooperating with law enforcement, preserving evidence, and pursuing institutional remedies.

95. One or more Doe Defendants knew of Plaintiff's protected activity.

96. After Plaintiff engaged in protected activity, one or more Doe Defendants personally participated in, approved, recommended, ratified, or knowingly failed to stop adverse actions against Plaintiff, including repeated transfers, destabilizing classification or housing decisions, disclosure or failure to protect his PREA-victim identity, deficient protection, interference with continuity of mental-health care, unsafe handling, or other treatment that would deter a person of ordinary firmness from reporting staff sexual abuse.

97. Plaintiff's protected activity was at least a motivating factor in the adverse actions.

98. The adverse actions lacked a legitimate penological basis, were excessive in relation to any asserted basis, or were undertaken with retaliatory motive or deliberate indifference to Plaintiff's protected rights.

99. The fact that WDOC allegedly could not safely house Plaintiff while protecting his confidentiality and preventing staff hostility or retaliation supports the inference that Plaintiff suffered materially adverse consequences because he reported and cooperated against a correctional officer.

100. As a direct and proximate result, Plaintiff suffered compensable injuries and damages.

## COUNT III

### 42 U.S.C. § 1983 - Eighth Amendment Deliberate Indifference / Failure to Protect / Post-Assault Harm Against Doe PREA, Classification, Transfer, and Supervisory Officials in Their Individual Capacities

101. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

102. After Plaintiff reported staff sexual abuse, Doe Defendants knew Plaintiff faced a substantial risk of serious harm, including retaliation, intimidation, further trauma, disclosure of his PREA-victim identity, psychological destabilization, disruption in mental-health care, unsafe institutional handling, and harm if returned to physical custody.

103. Doe Defendants had actual knowledge of this risk through Plaintiff's report, the PREA process, law-enforcement involvement, Plaintiff's expressed fears, Plaintiff's mental-health contacts, the substantiated nature of the complaint, the criminal proceedings, and the known hostility by correctional staff toward a prisoner whose report resulted in another officer being charged, arrested, convicted, and incarcerated.

104. Doe Defendants failed to take reasonable measures to protect Plaintiff, failed to preserve his confidentiality, failed to ensure adequate retaliation monitoring, failed to conduct or implement adequate incident-review and protective measures, failed to ensure trauma-informed handling, and failed to preserve continuity of safety and mental-health care.

105. Doe Defendants' failures were not isolated negligence; they reflected conscious disregard of a known, substantial risk to a prisoner who had reported sexual abuse by staff.

106. WDOC's alleged inability to maintain Plaintiff's confidentiality and safely house him after a substantiated PREA complaint further supports the inference that reasonable protective, retaliation-monitoring, confidentiality, and after-action measures were not taken.

107. As a direct and proximate result, Plaintiff suffered compensable injuries and damages.

**COUNT IV**

**Prospective Injunctive and Protective Relief Against Secretary Hoy in His Official Capacity Only**

108. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

109. Plaintiff remains on extended supervision for several years and remains subject to WDOC legal custody, control, supervision, supervision personnel, supervision records, and potential return to physical custody.

110. Because Plaintiff remains under WDOC supervision, the risk of retaliation, unnecessary disclosure, punitive supervision handling, unsafe treatment, or adverse action arising from Plaintiff's PREA report and cooperation is ongoing rather than purely historical.

111. Prospective relief is necessary to prevent ongoing or future constitutional injury and to protect Plaintiff's safety, identity, PREA-victim confidentiality, and access to appropriate care while this action proceeds and while Plaintiff remains under WDOC supervision.

112. Plaintiff seeks narrowly tailored prospective relief requiring reasonable protection from retaliation; preservation of records; confidentiality of Plaintiff's true identity and PREA-victim status except on a strict need-to-know basis; non-retaliatory supervision handling; reasonable restrictions on internal dissemination of PREA-related records; and an appropriate

written safety and confidentiality plan if Plaintiff is detained, revoked, transported, housed, or otherwise returned to physical custody.

113. Plaintiff does not seek monetary damages against Secretary Hoy in his official capacity.

**COUNT V**

**Wisconsin Law - Assault and Battery**
**Against Defendant Jeanpierre**

114. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

115. Jeanpierre intentionally caused Plaintiff to experience apprehension of harmful or offensive contact and intentionally made harmful and offensive sexual contact with Plaintiff without consent.

116. Jeanpierre's conduct constituted assault and battery under Wisconsin law.

117. As a direct and proximate result, Plaintiff suffered compensable injuries and damages.

**COUNT VI**

**Wisconsin Law - Intentional Infliction of Emotional Distress**
**Against Defendant Jeanpierre**

118. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

119. Jeanpierre's conduct was intentional or reckless.

120. Jeanpierre's conduct was extreme and outrageous because he used his power as a correctional officer to sexually abuse a prisoner in his custody.

121. Jeanpierre's conduct caused Plaintiff severe emotional distress.

122. As a direct and proximate result, Plaintiff suffered compensable injuries and damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

A. Compensatory damages in an amount to be determined by the jury;

B. Punitive damages against individual Defendants as permitted by law;

C. Nominal damages as permitted by law;

D. Declaratory relief as appropriate;

E. Prospective injunctive and protective relief requiring reasonable protection from retaliation, preservation of records, confidentiality of Plaintiff's identity and PREA-victim status, non-retaliatory supervision handling, and a written safety/confidentiality plan if Plaintiff is returned to physical custody;

F. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable law;

G. Pre-judgment and post-judgment interest as allowed by law; and

H. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 1st day of October 2026,

Electronically signed by:

s/ *Lonnie D Story*____________
Lonnie D. Story, Esq.
Wis. Bar #: 112459
Attorney for Plaintiff John Doe

STORY LAW FIRM, LLC
732 N. Halifax Ave., #301
Daytona Beach, FL 32118
Telephone: (386) 492-5540
Email: lstorylaw@gmail.com